IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 21-cr-00391 (BAH) |
| | ) | |
| LEONARD GRUPPO, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

Defendant , by and through his attorney, Lindsey Law Firm, L.L.C., Daniel R. Lindsey, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the Defendant requests that this Court sentence Gruppo to a probated sentence and $500 in restitution.

## <u>INTRODUCTION</u>

Mr. Leonard Gruppo is 56 years old, born in 1964. He attended College at Penn State University in State College, Pennsylvania. He withdrew and Joined the United States Army. His military career began at Fort Benning Georgia where he completed Basic Training and Jump School. In 1990, he was sent to Fort Bragg, North Carolina for Special Forces Training. He has always been a republican like his father, who was a Pennsylvania legislator. He spent 27 years in service to his

country, in combat zones in 4 wars with exemplary service. He retired honorably in 2013 with 80% service-connected disability.[1]

Mr. Gruppo's military service should not be used against him to support an argument for incarceration. He served his country honorably for 27 years, in 4 wars and was willing to give the *last full measure of devotion* to his country—and still is. If he thought for one second that violence would occur at the capital that day, he would not have gone. He was there to support the President of the United States in a peaceful rally. He trusted the President as he trusted Presidents Obama, Bush, and Clinton. Mr. Gruppo tried to keep his military service out of this matter, but the Government has chosen to use his military service against him. For this, Mr. Gruppo has authorized counsel to provide the court with some accomplishments and couple of anecdotes about his service. They are attached as *exhibit 1*.

## FACTS

Mr. Gruppo decided to go to the capital at the request of his long-time friend, Dr. Kenneth Kelly, to support the President of the United States. He and his wife traveled from Clovis New Mexico to Washington, D.C., and stayed at a hotel close by the Capitol. Mr. Gruppo got up early and went to the Ellipse, but it was cold, so he went back to his hotel. Later he went back to the Ellipse to see the

---

[1] Mr. Gruppo's service injuries consist of documented lumbar spine degeneration, joint degeneration, vitiligo (an autoimmune disorder), Stenosis, broken left ankle in 3 places from parachute jump, hypertension, sinusitis from military SCUBA diving pressure injury, back and joint injuries from 65 parachute jumps and hundreds of miles of ruck sack marching with heavy combat loads.

President Speak. There was a very large crowed at the rally. He heard the President state that they were all moving to the capital, and he believed President Trump would be going with them to the Capitol. The President also stated to be peaceful. They walked to the Capitol, stopping to take a picture with his friend Dr. Kelly at the Washington Monument. See figure 2, page 5, Government sentencing memorandum. They ended up on the northwest side of the capital as indicated in Government Figure 4, page 6, overhead of capital with red arrow.



Mr. Gruppo arrived at this grassy area about 2 and ½ hours before he entered the capital. Mr. Gruppo indicated that he could not see much from where he was standing. From this vantage point Counsel was able to find several pictures of that area from the internet.

*Figure A* below, shows the approximate location of Mr. Gruppo during that time.

*Figure A.*

*Figure A,* below, angle of the grassy waiting area before ascending the stairs behind the scaffolding. *Red Arrow* depicts waiting area, and *Blue arrow* depicts the Stair abutment that was climbed by Gruppo

To gain access to the stairs.



*Figure A.*

Mr. Gruppo waited in this area for about 2 and ½ hours. He did see a light blue puff of smoke and a pink puff of smoke, and to hearing individuals on bullhorns urging the crowd to keep moving forward. He also saw people scaling the retaining walls to get to the staircase beside him. Mr. Gruppo did not see any people engaging in violence or engage with law enforcement. From his vantage point, it was not possible to see what was going on in front of the Capitol building. The steps up to the Capitol were full of people moving, en mass, up the stairs to the

Upper West Terrace. Figure Below, shows the route that was taken by Gruppo to get to the Northwest entrance to the Capitol.



*Figure B.*

At no time did Mr. Gruppo see any officer pursuing rioters as they climbed the white scaffolding directly above him. He did not hear the chants described in the Governments Sentencing memorandum of "Stop the Steal" or "Our House." He did hear people on bull horns and the loud sound of the crowd. He did not chant anything. He was caught in a surge of people pushing forward to the stairs. He went along with the crowd and eventually climbed up onto the banister of the stairs, near the bottom of the stairs, it was bit higher than he was tall. He walked up

the broad banister for a short distance then stepped down onto the stairs themselves. He walked up the stairs from there, to the terrace.



*Figure C.* Front view of path taken

In his own words….

"When I reached the terrace, there seemed at least 5,000 people within my purview, and within just a few minutes of his arrival the scene rapidly changed from bizarre to chaotic as the police suddenly created a large perimeter around the center of the terrace. This prompted me to look for a way out. All around was a crush of people, shoulder to shoulder, covering the only two stairways I could see leading to the terrace; the stairway I originally ascended and another coming up from under the terrace. I would have to climb on top of them to get down from there. Then I saw there were two open doors leading into the Capitol near where I was, and people streaming through them unimpeded. I later conservatively calculated that at least 1,600 people entered through those doors. There had to be an exit from there and so I made a quick decision that the most expeditious and safest way off the terrace was through the Capitol. As I came up to the door, they didn't seem to be damaged and there was no signage anywhere. I could see a broken pane of glass in a window next to the door which did give me pause that entering could be problematic, but I had no idea how problematic it would prove to be, and my overwhelming consideration was to get safely away from the terrace as

quickly as possible. I could not comprehend the scope of what was happening that day from what I witnessed around me. It was only during the days, weeks and months that followed, that it became more evident. Once inside, I made every effort to find a way out as quickly as possible. The brief 6-miutes I spent inside, and all the other evidence, supports this testimony. I did see some broken furniture, a bench I think, in the hallway which made me redouble my efforts to quickly exit the building. I spoke with 3 police officers during the brief time I was inside and asked each of them how to get out. The first was near the door I entered, and he pointed to the way I came in, saying that was the only way he knew to get out. He did not tell me to leave. A review of his body cam recording will show that I am telling the truth. The second officer didn't know. The third directed me to the open door through which I exited. I was there that day on the capital grounds and in the Capitol to support the President of the United States. I was not there, nor was it my intent to stop Congress from certifying the election. I have plead to parading in the Capitol, and that is the extent of my parading. Shortly after exiting, I encountered three police officers, a woman being assisted by two men. She seemed in some distress, likely from tear gas in my estimation, and I offered them assistance, but my offer was declined. I walked with all haste back to my hotel, avoiding any contact with the large crowds still surrounding the Capitol. I gave some money to a homeless man on my way back. I shouldn't have been inside the Capitol, or in retrospect even near it, I realize that now, but I hope this illuminates my thinking and actions. I am telling the truth." *Exhibit 2*, Statement of Leonard Gruppo

Mr. Gruppo had a mobile phone when he entered the Capitol. During his voluntary statement with Agent Bolyard and Government counsel, Mr. Gruppo told them that after he left the capital, he learned through news reports the extent of what had happened in other areas of the Capitol, and he was ashamed that he was even there. He honestly admitted to deleting those photos because of the shame that he felt about that day. He deleted them shortly after arriving at his home in New Mexico, long before Ken Kelly's case became public or his picture appeared

in the papers. He did not share the pictures on social media and did not boast about them or his participation in anything that happened on the 6th, or otherwise. He is not proud of that day and the evidence supports that he is telling the truth. He is well aware that simply deleting the photos from his phone only deletes them so that he cannot see them, and it did prevent him from looking at them. But that did not prevent the Government from seeing them. Mr. Gruppo could have destroyed the phone, his computer and hard drive, if in fact he wanted to destroy evidence. He did not. Mr. Gruppo voluntarily turned his phone and the passwords over to the Government, without a warrant when he was arrested on June 1, 2021, along with his Mac Pro and a 3-terabyte hard drive along with the passwords to all his social media and to the computer and hard drive, long before any plea agreement was offered in his case. Nothing was promised in exchange for his voluntary giving up his sacred Constitutional Rights. *Exhibit 2*, Statement of Leonard Gruppo.

*Charges and Plea Agreement*

There was no delay in coming forward to cooperate with the government.[2]

Dr. Kenneth Kelly was arrested on **April 23, 2021**. Mr. Gruppo found out Mr. Kelly was arrested from the internet. Mr. Gruppo wanted to come forward and turn

---

[2] Unknown to Mr. Gruppo, there were three (3) tips to the FBI regarding it identity in "UM1" in the Orlando Sentinel website on April 24th, 2021, report date May 11, 2021, to Agent Hopkins of the Albuquerque office, detailed in his report as, tips file 176-WF-3366759 intake and serials 26462, 26357 and 26368 provided in discovery.

himself in. He did not know how and did not have an attorney and asked some colleagues in the medical field who they would recommend. Mr. Gruppo's 1st contact with his undersigned counsel was **April 28th**, **2021**, inquiring about how he could turn himself in to authorities. Counsel 1st opportunity to meet with Mr. Gruppo was on April 30, 2021, where Mr. Gruppo expressed his desire to turn himself in to authorities as soon as possible and instructed counsel to make arrangements to do so. That meeting was short as counsel had interviews set all day. A more in-depth appointment was set with counsel on May 4th at 1:30. At that meeting Mr. Gruppo expressed his desire to make it known that he was UM1 in the photos from Dr. Kelly's arrest and wanted to turn himself in. On May 4-7th counsel, a sole practitioner in a military town, had a full calendar consisting of Jury Selections, hearings and appointments. After some research Counsel, on May 10, 2021, called Assistant United States Attorney for the Northern District of Texas, Jeffrey Hauge and left a message.

On May 11, 2021, Counsel had a conference call with AUSA Jeffrey Hauge regarding Mr. Gruppo turning himself in. Counsel was able to pull documents from the Federal Database and discovered the AUSA assigned to the prosecution of Dr. Kenneth Kelly. *United States v. Kenneth Kelly, 1:21-cr-00331*. Counsel called the assigned AUSA on Wednesday, May 12, 2021, and informed counsel of Mr. Gruppo's intent to turn himself in and cooperate. Defense counsel had depositions

in a wrongful death case on Thursday, May 13, 2021, and a Motor Vehicle hearing on Friday the 14th. On Monday the 17th, counsel emailed AUSA Mirell and AUSA Jeffrey Haag stating "Counsel:

**"Thank you for speaking to me last week in reference to Kenneth Kelly and UM1 in the statement of facts attached. My client wishes to identify himself as UM1, the man with the sunglasses in the "Screen Capture 1" and Surveillance Photo 3 in the attachment. He is a medical provider and was invited to the capital rally by Mr. Kelly. His name is: Leonard Gruppo and his d.o.b. is November 30, 1964. He was not involved, nor did he witness any violence at the rally or the capital. He is currently in Lubbock Texas and would like to turn himself in. He is a veteran-Former Green Beret 14 years, deployed to Korea, Saudi Aribia, Kuwait, Afghanistan, Baghdad Iraq, 27 years in the service. Legion of Merit, Bronze Star etc. He is highly decorated. June 2013, he retired. He has 80% service-connected disability. He is ashamed and embarrassed for being associated with what happened there. He held a "Top Secret, specialized compartmentalized Information" clearance for 10 years.**

**If you would like an interview, please let me know the logistics as he wants to cooperate. We would like to accomplish this by next Wednesday the 26th if at all possible. He would like his service to his country to be left out of any pleadings if possible.**

**Please let me know how you would like to proceed.**

**Sincerely and Respectfully,**

**Daniel R. Lindsey, Esq.**
**Tx Bar# 24001012"**

After several emails back and forth between counsel the Statement of Facts was filed and Mr. Gruppo's initial appearance was set for June 1, at 1pm in Lubbock Federal Building. Mr. Gruppo has been cooperative throughout.

There was no delay in Mr. Gruppo taking responsibility for his involvement on January 6, 2021. It was immediate. Mr. Gruppo did receive a message from Dr. Kelly but it was only AFTER he had decided to come forward and turn himself in and after he had met with counsel to facilitate such. There was no arrest warrant at

that time, no statement of facts and no complaint against Mr. Gruppo. All of those documents were generated AFTER contact was made with the United States Attorney's offices. Any delay in this matter was solely due to Mr. Gruppo's Counsel's busy schedule and not any fault of Mr. Gruppo.

### *Alleged Destruction of Evidence*

There was no destruction of evidence. After Mr. Gruppo discovered the violence and destruction that had occurred via media accounts on January 6th , he was ashamed and horrified as to what had taken place. He had not seen the violence and assaults on Capital Police Officers. He wanted to disassociate himself from what had happened and deleted photos on his phone's visible memory after he got home to prevent himself from looking at them. Mr. Gruppo believed that the photos were still on the phone but had to be pulled from the memory. He voluntarily turned over his phone with the password, his home computer and he provided all the passwords to those devices for a thorough forensic evaluation-voluntarily. If he wanted to destroy evidence, he could have physically destroyed his phone, the computer, and the hard drive. Instead, he voluntarily turned them over to Agent Bolyard, along with all of the passwords with nothing in return.

Mr. Gruppo has voluntarily provided any and all information and cooperated with the Government without anything in return-no promises.[3]  He turned over all of his electronic devices without a warrant - waiving crucial United States Constitutional rights. Mr. Gruppo voluntarily gave up more Constitutional rights by submitted to questioning by an Agent of the FBI and Counsel for Government. He gave truthful information to them. He is remorseful and ashamed that he was present at and in the Capital that day. He outlined what he did on January 6, 2021, from the early morning hours to after the riots and insurrection at the Capitol. For six minutes he was in the Capitol, and all of it was documented on government cameras. No body cam video was produced by the government from the Officer he spoke to inside the door of the Capitol that day.

Mr. Gruppo truthfully and honestly answered all questions put to him by the Government. He detailed his route to the capital and explained that he was in the grassy area to the north of the capital steps for hours, and finally climbed up the North Stairway support column to get on the stairs that led to the landing where he entered the capital. He could not walk around all the equipment and scaffolding that obscured his access to the stairs and obscured his view of the front of the Capitol where much of the violence occurred.

---

[3] Mr. Gruppo is cooperating with the Select Committee to Investigate the January 6th Attack on the United States Capital. He gave a voluntary statement to Kevin S. Elliker and Sandeep Prasanna, Investigative Counsel for the Committee on October 12, 2021, and has expressed a willingness to cooperate further.

Mr. Gruppo did not engage in any violence and did not see any violence. He did not break or damage anything. He did not engage in chants or slogans. He did not carry signs or posters and never brandished a weapon of any kind.

## STATUTORY AND GUIDELINE ANALYSIS

**Statutory Penalties**

The defendant is to be sentenced on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000.00. As discussed below, the defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

**SECTION 3553(a) FACTORS**

18 U.S.C. § 3553(a) mandates that a court "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals. In imposing a sentence that is "sufficient, but not greater than necessary," the court should look to the statutory factors listed under Section 3553. These factors include:

**1. Nature and circumstances of the offense and history and**

13

**History and characteristics of Mr. Gruppo.**

What happened at the Capitol was horrible. There is no dispute here. The violence against Capitol Police officers, damaging the Capitol grounds and invading one of the most sacred places of our Democracy, by many to overthrow a legal and valid election. Mr. Gruppo was not one of those persons. Mr. Gruppo did not see any violence or engage in any violence; did not break anything or break or remove any barrier; did not confront or fight with police. He did not enter any offices; did not enter the House or Senate floor; he did not take any "souvenirs;" or engage in conduct that has been exhibited on news accounts or in other Capitol riot cases. He was unable to see those events because of the position he was in on the north side of the Capitol steps with his view obscured by the scaffolding and steps. When he saw the news accounts, he was ashamed for being there.

He also was not affiliated with any organized or extremist group. E.g., the Proud Boys, militiamen, white supremacist, anti-maskers, etc.  He voluntarily brought himself to the attention of the authorities and fully and completely cooperated in every respect with the Government, willingly giving up sacred constitutional rights with nothing promised to him in exchange.

Mr. Gruppo's intent was to support the President of the United States. Not to overthrow a legal and valid election. The President himself gave indications that he himself was going to the Capitol and Mr. Gruppo wanted to support him. President

Trump at the rally claimed falsely, "**And after this, we're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down**." … **"I know that everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard."** Unfortunately, Mr. Gruppo Believed these falsehoods. He wanted to support the President of the United States. It was in his blood, in his training for 28 years in the military. After all, if you cannot trust your President who can you trust? Mr. Gruppo was misled by an amoral and untruthful President and he regrets putting his trust in him.

Mr. Gruppo is remorseful for what has happened. Attached is Mr. Gruppo's statement in his own words. He has suffered and will suffer more for his participation in the President's so called peaceful rally on the capital. See *Exhibit 2*

## HISTORY AND CHARACTERISTICS OF MR. GRUPPO

By all accounts, Mr. Gruppo has been an exemplary soldier and citizen. He has no criminal history and has been employed continuously since enlisting in the Army in 1986. He has cooperated extensively, above and beyond what any Capital Defendant has demonstrated. He has complied with his conditions of release, even though he has had to relocate due to loosing his previous job. The Government is right, a well-educated veteran with a distinguished career in the military should have known better. He should have recognized what was happening and that his

conduct contributed to an insurrection and the peaceful transfer of power, two democratic tenets that Leonard repeatedly risked his life for over 28 years to defend. He is ashamed and contrite for this. It was a mistake.

## NEED TO AVOID SENTENCING DISPARITIES

In *United States v. Bustle*, 21-CR-0238(TFH), the defendants similarly entered the Capitol after the building had been breached, walked around for about 20 minutes, did not engage in violence or cause damage, and were sentenced to 24 months of probation. In *United States v. Morgan Lloyd*, 21-CR-0164(RCL), the defendant similarly entered the Capitol on January 6, walked around and took pictures. She also posted to Facebook that "I'm here. Best day ever. We stormed the capitol building me and Donna Bissey were in the first 50 people in." She further posted that "It was a day I'll remember forever. I'm proud that I was a part of it. No Shame. BTW turn off the #FakeNews." She also called the events "the most exciting day of my life." Gov. Sent. Memo at 3 in 21-CR-0164 (Doc. 22). The government in that case recommended probation and Judge Lamberth sentenced Morgan Lloyd to 36 months of probation. These cases are similar to the instant matter and should inform the Court's sentence of probation for Mr. Gruppo.

It is also notable that the probation office has recommended a term of 36 months (three years) probation after considering all the sentencing factors. The justifications for that recommendation are that… "This sentence is recommended

considering the nature and circumstances of the offense and to reflect the seriousness of the conduct; on January 6, 2021, the defendant entered the US Capitol building knowing that he did not have permission to enter the building. He entered willfully and knowingly for the purpose of parading, demonstrating, or picketing in the US Capitol building."  Furthermore, Mr. Gruppo has been in compliance with his pretrial supervision and the terms of his release.

## CONCLUSION

Mr. Gruppo recognizes that he should not have been in the Capitol on January 6, and that he must be punished for that conduct. However, his behavior on that day is not deserving of a prison sentence considering that he did not engage in violence or destruction, has been extremely cooperative and has great remorse. His conduct should not result in incarceration and personal ruin.

Mr. Gruppo respectfully requests that after considering the § 3553(a) factors, the Court impose a sentence of 36 months of probation and restitution. Considering the relevant case law and pursuant to 18 U.S.C. § 3553(a) such a sentence is sufficient but not greater than necessary.

**Dated**: October 19, 2021

Respectfully submitted,

Lindsey Law Firm, L.L.C.

By: _____-s-_____
Daniel R. Lindsey
Texas Bar # 24001012
920 Mitchell Street
Clovis, New Mexico 88101
Tel: (575) 763 8900
Fax: (575) 763 1771
E-mail: danlindsey@suddenlink.net
*Counsel for Defendant Leonard Gruppo*
*Pro Hac Vice*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of October,  2021, I caused a true and correct copy of the foregoing Defendant's Sentencing Memorandum  to be delivered via ECF to the Parties in this matter.

/s/

_____

Daniel R. Lindsey